# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

**GLENN DAMOND,**

**Plaintiff**

v.

**ST. TAMMANY PARISH GOVERNMENT; MIKE B. COOPER, Parish President, in his official capacity; JOE IMPASTATO, Councilmember, in his official capacity; PAT BURKE, Councilmember, in his official capacity; ARTHUR LAUGHLIN, Councilmember, in his official capacity; RICH SMITH, Councilmember, in his official capacity,**

**Defendants.**

Civil Action No. _____ **25-2527**          **SECT.GMAG.5**

## INTRODUCTION

Plaintiff, **Glenn Damond**, brings this civil rights and constitutional action against the **St. Tammany Parish Government** and its officials in their official capacities for enacting and enforcing an ordinance that unlawfully coerces landlords to breach binding lease agreements, imposes ruinous financial penalties, and deprives Plaintiff of fundamental rights secured by the United States Constitution.

The ordinance, enacted in March 2024 and enforced in August 2024, imposes $500-per-day fines on landlords who house individuals classified as sex offenders, resulting in accumulated penalties of approximately $90,000 and forcing Plaintiff's displacement despite judicial findings that he is not a predator and has been removed from the registry once before. 1 million insurance policy, 24-hour security(4 different guards), 5000 permit fees, 6-foot fence where no one can see housed sex offenders.

Plaintiff seeks declaratory and injunctive relief to invalidate the ordinance, compensatory damages for constitutional and emotional harms, and recognition that Defendants' conduct violates the **Contracts Clause, Due Process Clause, Equal Protection Clause, Ex Post Facto Clause, Bill of Attainder Clause, Liberty Interest, First Amendment and Eighth Amendment,** as well as Louisiana tort law prohibiting intentional and negligent infliction of emotional distress.

Critically, under **Article XII, Section 10(A) of the Louisiana Constitution**, neither the State nor its political subdivisions are immune from suit or liability in contract or for injury to person or property. Accordingly, **St. Tammany Parish Government cannot claim immunity** for impairing contracts or causing injury to Plaintiff's person and property. This action therefore properly seeks both federal

and state remedies against Defendants for ongoing violations of law and constitutional rights. Moreover, under Louisiana Civil Code Article 2320 and the Louisiana Supreme Court's decision in *Martin v. Thomas*, 346 So.3d 238 (La. 2022), the Parish is liable both vicariously and directly: vicariously, for the unconstitutional acts of its officials committed within the scope of employment, and directly, for its own negligence in enacting and enforcing ordinances animated by stigma and prejudice rather than legitimate governmental interest. Accordingly, Plaintiff seeks damages jointly and severally against St. Tammany Parish Government for constitutional violations, contract impairment, and superior liability under Louisiana law.

## JURISDICTION

1. This Court has jurisdiction over this action pursuant to **28 U.S.C. § 1331**, because Plaintiff asserts claims arising under the Constitution and laws of the United States, including violations of the Contracts Clause, First Amendment, Due Process Clause, Equal Protection Clause, Ex Post Facto Clause, Bill of Attainder Clause, and the Eighth Amendment.

2. Supplemental jurisdiction exists under **28 U.S.C. § 1367** for Plaintiff's related state law claims, including intentional and negligent infliction of emotional distress and family distress/loss of consortium, as they arise from the same nucleus of operative facts. Article 2320 (respondeat superior liability), These state law claims form part of the same case or controversy as the federal constitutional claims

3. **Superior Liability** Defendants are liable both vicariously and directly under Louisiana Civil Code Article 2320 and the Louisiana Supreme Court's decision in *Martin v. Thomas*, 346 So.3d 238 (La. 2022). St. Tammany Parish Government is responsible for the unconstitutional acts of its officials committed within the scope of employment, and independently liable for its own negligence in enacting and enforcing ordinances animated by stigma and prejudice rather than legitimate governmental interest.

4. Pursuant to **Article XII, Section 10(A) of the Louisiana Constitution,** neither the state, a state agency, nor a political subdivision shall be immune from suit and liability in contract or for injury to person or property. Accordingly, St. Tammany Parish Government cannot claim immunity from suit for impairing contracts or causing injury to Plaintiff's person or property.

5. "This action is of an emergency nature. Plaintiffs face imminent and irreparable harm, including displacement from housing, risk of incarceration, and ongoing violations of constitutional rights. Immediate judicial intervention is required to preserve Plaintiff's constitutional protections."

## VENUE

6. Venue is proper in this Court under **28 U.S.C. § 1441(a)** and **28 U.S.C. § 1391(b)** because the Eastern District of Louisiana embraces the Parish of St. Tammany, where the state action was originally filed and where the events giving rise to the claims occurred.

7. All Defendants are public officials or a political subdivision located within the Eastern District of Louisiana, making venue proper in this Court.

## PARTIES

**Plaintiff**

8. **Glenn Damond** is an individual domiciled in St. Tammany Parish, Louisiana. Plaintiff is directly affected by the ordinance enacted in August 2024 that imposes $500-per-day penalties on landlords who house individuals classified as sex offenders. Plaintiff has suffered displacement, denial of housing, financial injury, emotional distress, and ongoing threats of incarceration as a result of Defendants' actions.

**Defendants**

9. St. Tammany Parish Government is a political subdivision of the State of Louisiana, responsible for enacting and enforcing ordinances within the Parish. It is sued directly for impairing contracts and causing injury to Plaintiff's person and property under the US Constitution. Pursuant to Article XII, Section 10(A) of the Louisiana Constitution, the Parish cannot claim immunity from suit in contract or tort. And is barred from claiming 11 amendment immunity (*Monell v. Department of Social Services*, 436 U.S. 658, 690 (1978).

10. Mike B. Cooper, Parish President, is sued in his official capacity for implementing and enforcing the challenged ordinance. Plaintiff does not seek damages against Cooper personally, but seeks declaratory and injunctive relief to restrain enforcement of unconstitutional laws. Official-capacity suits against executive officers are permitted under *Ex parte Young*, 209 U.S. 123 (1908), which allows prospective relief against ongoing constitutional violations.

11. Joe Impastato, Pat Burke, Arthur Laughlin, and Rich Smith, Councilmembers of the St. Tammany Parish Council, are sued in their official capacities for voting to enact and enforce the challenged ordinance. Plaintiff does not seek damages against

these Councilmembers personally but seeks declaratory and injunctive relief to invalidate the ordinance. Legislative immunity does not bar official-capacity suits for prospective relief against unconstitutional enactments. See *Board of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356 (2001).

## Immunity Considerations

12. Plaintiff expressly sues all individual Defendants only in their official capacities, seeking prospective declaratory and injunctive relief to halt enforcement of unconstitutional laws.

## STATEMENT OF FACTS

13. In **August 2024**, the St. Tammany Parish Government enacted an ordinance imposing **$500-per-day penalties** against landlords who housed individuals classified by the Parish as sex offenders.

14. The ordinance provided **no individualized risk assessment process**, applied retroactively to decades-old convictions, and operated irrespective of judicial findings.

15. Plaintiff was lawfully housed under a private **written lease agreement** that gave termination rights only to the landlord and tenant, with specific notice and cause provisions. The lease contained no provision authorizing termination by third parties or governmental entities absent court order, and Plaintiff was not in breach or default. (See Exhibit-1).

16. From August 2024 forward, penalties accrued daily against landlords, reaching approximately **$90,000** by the time the matter was presented in the Eastern District of Louisiana.

17. To avoid further accrual, landlords were pressured to enter agreements with St. Tammany Parish Government to evict tenants by **January 2026**, including tenant like Plaintiff whose court records reflected **non-predator determinations** and **registry removal** by a sentencing judge before being put back on it by the appeals court. (See Exhibit- 3)

18. Plaintiff was present 12-03-2025 in their attorney's office and personally heard the attorneys say that the Parish agreed that if you( the landlords, Abram Willaims) get rid of all the sex offenders, he(The Parish) will waive the $90,000 fee he owes.

19. The Parish justified enforcement by citing a singular, unrelated incident involving a woman who killed a sex offender with whom she had a drug relationship, of which all this was not disclosed to the public. This incident had **no nexus to Plaintiff's**

**housing, conduct, or risk profile**, yet was used to fuel ordinances and enforcement decisions.

20. Plaintiff was denied housing **16 times in 3 weeks,** solely due to the ordinance and associated penalties. Plaintiff faced threats of **arrest and incarceration** if and for failing to secure compliant housing by January 2026, despite diligent efforts and absent any misconduct. 11/26/2025 plaintiff was denied housing by a renter at 504-239-8126, a 1-bedroom on St Rock; at 504427-2723,

21. Plaintiff was denied the house on Toledano street, and at Rocket ranch Trailer Park, 985-643-6080, was denied 3 different trailer parks within 30 minutes, all because of the sex offense. They personally informed the plaintiff that they cannot rent to sex offenders. Right after Plaintiff was denied 6 more times because of the background of a sex offense 28 years old.

22. Plaintiff has suffered displacement, denial of consistent housing, financial injury, emotional distress, and **systemic threats of incarceration** arising not from verbal warnings but from the coercive structure of the ordinance itself. (See Exhibits A-E)

23. By imposing escalating fines and regulatory burdens designed to drive sex offenders out of contract housing and not instituted as a transition housing, the ordinance functions as a mechanism of ongoing intimidation and punishment, effectively weaponizing local law to force Plaintiff's removal and perpetuate the constant risk of imprisonment.

24. The ordinance effectively eliminated Plaintiff's ability to maintain his existing home for 2 years, under the lease, and to secure alternative housing in the Parish. Every other landlord in St. Tammany Parish denied Plaintiff housing within 3 weeks denied Plaintiff housing because of the 28-year-old sex offense.

25. Plaintiff has to raise money from his barely making it family to find someone to sell him a home with no money down and pay a 25-30 mortgage to prevent him from going back to jail, being unable to find someone to rent to him. (See Exhibits T-T-10).

26. Now, Plaintiffs' bills will go from 600 ( no lights, gas or water) for rent to more than double, over 1500 paying double rent, now gas and lights in addition to all other bills which he is currently in debt behind on car notes, insurance, rent, Parole fees. ( See, Exhibit- D)

27. Plaintiff's sentencing judge had previously determined that Plaintiff was **not a predator** and removed him from the registry before. Despite this judicial finding, Defendants enforced the ordinance against Plaintiff, disregarding individualized judicial risk assessments.

28. As a direct result of Defendants' actions, Plaintiff has suffered severe and ongoing harm, including. Persistent stress and fear of eviction and incarceration.

29. Substantial weight loss, within a year, dropping from 210 pounds to 178 pounds.

30. Missed workdays and job losses due to inability to function under constant threat, pressure, and fears of reincarceration.

31. Impaired communication with family, including his mother's ongoing fear and grief.

32. Plaintiff's mother has cried consistently in fear of losing her son to jail again, reflecting the ordinance's cascading harm on family welfare and stability.

33. Defendants' ordinance and enforcement actions were arbitrary, retroactive, and animated by passion and prejudice, rather than legitimate governmental interests, and have deprived Plaintiff of his constitutional rights and liberty interests.

34. The ordinance also violates the Eighth Amendment prohibition on cruel and unusual punishment, as applied through *State v. Perry*, 610 So.2d 746 (La. 1992), which condemned punitive measures that degrade human dignity and reduce individuals to "things." In *Perry*, the Louisiana Supreme Court cited *Forma v. George* to emphasize that punishment must not strip offenders of humanity or subject them to societal rejection beyond their sentence.

35. By imposing perpetual housing exclusion, retroactive penalties, and threats of incarceration, Defendants have created a system that causes society to reject Plaintiff and treat him as less than human solely due to a decades-old conviction already adjudicated and resolved. This structure mirrors the unconstitutional degradation condemned in *Perry* and *Forma*, where punishment crossed into dehumanization and societal banishment.

36. The Parish's ordinance therefore constitutes ongoing cruel and unusual punishment, violating the Eighth Amendment and Louisiana constitutional guarantees of dignity and proportionality.

37. "Defendants, by enacting and enforcing Ordinance **No. 24-9258**, impaired valid landlord–tenant contracts by coercing landlords to evict or refuse Plaintiff

6

housing, thereby destroying Plaintiff's leasehold interests and property rights. This impairment caused injury to Plaintiff's person, including loss of liberty, mental distress, and risk of re-incarceration, and injury to Plaintiff's property, including loss of housing rights, economic damages, and destruction of contractual value, in violation of the Contract Clause of the United States Constitution, Article I, Section 10, and the Fourteenth Amendment."

38. Defendants, by enacting and enforcing Ordinance No. 24-9258, have compelled private landlords to refuse housing to Plaintiff and others similarly situated, thereby forcing expressive conduct that communicates government-mandated stigma. This constitutes unconstitutional compelled speech under *West Virginia State Board of Education v. Barnette*, 319 U.S. 624 (1943).

39. Defendants have further infringed Plaintiff's right to freedom of association by criminalizing and penalizing lawful landlord-tenant relationships, in violation of *NAACP v. Alabama*, 357 U.S. 449 (1958).

40. These actions have caused Plaintiff injury to person and property, including denial of housing, risk of re-incarceration, and stigmatization, in violation of the First Amendment to the United States Constitution.

41. Plaintiff is a resident of St. Tammany Parish, Louisiana, and lawfully entered into a valid lease agreement with his landlord, Abram Williams, under Louisiana contract law.

42. In 2024, St. Tammany Parish enacted and enforced a housing ordinance targeting individuals with prior sex offense convictions, despite judicial findings that Plaintiff was not a predator and posed no individualized risk.

43. Parish officials, acting under color of law and within the scope of their employment, coerced landlords—including Abram Williams—into breaching valid lease agreements by threatening escalating fines, penalties, and enforcement actions if they continued to rent to Plaintiff.

44. As a direct result of this coercion, Plaintiff was displaced from stable housing, suffered repeated denials of residence, and endured ongoing threats of incarceration tied to the ordinance. Landlords likewise suffered financial losses, reputational harm, and were effectively placed under a "money bond" by the Parish's coercive enforcement scheme.

45. The ordinance resurrected Plaintiff's decades-old conviction and imposed new punitive disabilities, including civil banishment, coerced eviction, and reputational stigma. These burdens are retroactive, punitive, and animated by prejudice rather than legitimate public safety.

46. Plaintiff has suffered severe emotional distress, humiliation, and physical harm, including documented weight loss and deterioration of health, as a direct result of the Parish's unconstitutional actions. Plaintiff's family has endured grief and reputational harm, fearing his potential re-incarceration due to housing instability.

47. ☐ St. Tammany Parish Government is liable both vicariously and directly under Louisiana Civil Code Article 2320 and the Louisiana Supreme Court's decision in *Martin v. Thomas*, 346 So.3d 238 (La. 2022). Parish officials acted within the scope of employment when coercing landlords, and the Parish itself is independently liable for enacting and enforcing ordinances animated by stigma and prejudice rather than legitimate governmental interest.

48. This case was originally filed in state court, but after the emerging of the federal claims and changes of conditions, it was voluntarily dismissed without prejudice to be refiled in federal court (See Exhibit Order)

49. Plaintiff attempted to request the defendant's attorneys' office accept service from me as they have been accepting the paperwork in the state court proceedings, but after several ignored calls, no call backs, Plaintiff was unable to communicate this to them.

50. In the state court proceedings, Plaintiff had problems with trying to serve them, and from the Sheriff's office, they even evaded and refused service.

## CAUSES OF ACTION

### Count I – Contracts Clause Violation (Art. I, Sec. 10, Cl. 1) ( See Exhibit-1)

**Against:** St. Tammany Parish Government and Parish officials in their official capacities.

51. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

52. The Contracts Clause, U.S. Const. Art. I Sec. 10 prohibits states and political subdivisions from passing laws that impair the obligation of contracts.

53. Defendants enacted and enforced an ordinance that coerced landlords into breaching a binding private lease agreement with Plaintiff by threatening $500-per-day fines.

54. Plaintiff's lease vested termination authority exclusively in the landlord and tenant; the ordinance unlawfully nullified and impaired those bargained-for rights of that private agreement.

55. In a US case.

56. *Home Building & Loan Ass'n v. Blaisdell*, 290 U.S. 398 (1934) (limits on emergency powers to impair contracts).

57. In *United States Trust Co. v. New Jersey*, 431 U.S. 1 (1977) (state cannot retroactively impair financial obligations).

58. In *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234 (1978) (state law invalidated for substantially impairing private contracts).

59. In *Energy Reserves Group v. Kansas Power & Light*, 459 U.S. 400 (1983) (framework for evaluating contract impairments).

60. Defendants' ordinance constitutes a substantial impairment of private contract rights without legitimate justification, violating the Contracts Clause.

61. Under *Marbury v. Madison*, 5 U.S. (1 Cranch) 137 (1803), federal courts have the power and duty to invalidate laws that violate the Constitution. Judicial review applies here to strike down Defendant's ordinance.

62. The Supreme Court has established a three-part test for Contracts Clause claims:

63. (a) Whether the law substantially impairs contractual relationships.

64. (b) Whether the impairment is justified by a significant and legitimate public purpose; and

65. (c) Whether the impairment is reasonable and necessary to achieve that purpose. See *Home Building & Loan Ass'n v. Blaisdell*, 290 U.S. 398 (1934); *United States Trust Co. v. New Jersey*, 431 U.S. 1 (1977); *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234 (1978).

66. Defendant's ordinance fails each prong of this test:

67. Concerning Substantial Impairment, Plaintiff's private lease contracts were directly impaired when landlords were coerced into eviction agreements. This satisfies prong one. (*Allied Structural Steel*, 438 U.S. at 245).

68. With regards to No Legitimate Public Interest Defendant claims "public safety" based on one incident involving a woman who killed a sex offender in a drug-related dispute. That incident has no nexus to Plaintiff's housing or conduct. Plaintiff's sentencing judge explicitly found Plaintiff was not a predator and removed him from the registry before. Therefore, Defendant cannot claim legitimate public safety interest. (See Exhibit-P)

69. In (*Blaisdell*, 290 U.S. at 444 – requiring a real emergency; *Romer v. Evans*, 517 U.S. 620 (1996) – laws motivated by animus fail rational basis review).

70. Speculative Fear ≠ Legitimate Interest. Emotional reaction to a single incident is insufficient to justify impairment. *County of Sacramento v. Lewis*, 523 U.S. 833

(1998) – arbitrary government action that shocks the conscience violates due process.

71. And there is no reasonable or Necessary Ordinance applies retroactively to a 28-year-old conviction, forces landlords to breach private contracts, and has denied Plaintiff housing over 16 times since November 19, 2025.

72. Under *United States Trust Co.*, impairment must be reasonable and necessary. Defendant's ordinance is excessive and punitive. (*United States Trust Co.*, 431 U.S. at 25).

73. This Targeted Impairment Ordinance singles out sex offenders as a class, coercing landlords to evict them. Targeted, retroactive laws are unconstitutional. (*Allied Structural Steel*, 438 U.S. at 247; *United States v. Brown*, 381 U.S. 437 (1965) – legislative punishment of a class is unconstitutional).

## Count II – Substantive Due Process Violation
## Fourteenth Amendment to the United States Constitution (3x)

**Against:** St. Tammany Parish Government and Parish officials in their official capacities.

74. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

75. The Fourteenth Amendment prohibits deprivation of liberty or property without due process of law.

76. Liberty interests include the right to contract, establish a home, and live free from arbitrary governmental interference (*Meyer v. Nebraska*, 262 U.S. 390 (1923); *Moore v. City of East Cleveland*, 431 U.S. 494 (1977)). Which they violated all three.

77. Defendants enacted and enforced an ordinance animated by passion and prejudice, citing an unrelated killing to justify retroactive penalties.

78. Something plaintiff had nothing to do with.

79. In *County of Sacramento v. Lewis*, 523 U.S. 833 (1998) (government conduct that shocks the conscience violates due process).

80. In *Washington v. Glucksberg*, 521 U.S. 702 (1997) (substantive due process protects fundamental rights).

81. In *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000) (arbitrary government action violates equal protection and due process).

82. Defendants' ordinance deprived Plaintiff of housing stability and liberty interests in violation of substantive due process.

83. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

84. The Fourteenth Amendment to the United States Constitution provides that no State shall "deprive any person of life, liberty, or property, without due process of law."

85. Liberty under the Due Process Clause is not confined to freedom from bodily restraint but extends to the full range of rights recognized in *Meyer v. Nebraska*, 262 U.S. 390 (1923), including the right "to contract, to engage in common occupations, to acquire useful knowledge, to marry, establish a home and bring up children."

86. Plaintiff's liberty interests include the right to establish and maintain a home, to contract for housing, and to live free from arbitrary governmental interference in those pursuits.

87. Defendant St. Tammany Parish enacted an ordinance in March 2024 and enforced it in August 2024 that imposed 500 a day penalty on landlords who housed sex offenders, and did not comply which Mr. Abram did not, and subsequently coerced landlords into evicting Plaintiff by Dec 31, 2025.

88. On November 19, 2025, Plaintiff witnessed the landlords in the Abram and Loraine Williams case agree to evict all sex offenders by January 2026 in exchange for waiver of 90,000 accrued penalties. This agreement directly impaired Plaintiff's ability to maintain his housing and liberty interests.

89. Plaintiff's sentencing judge had previously determined that he was not a predator and ordered his removal from the registry. Despite this judicial finding, Defendants have continued to weaponize the ordinance against Plaintiff's landlords, coercing them with escalating fines and regulatory burdens to terminate his housing. In effect, the ordinance operates as a systematic mechanism to force Plaintiff out of his home and deprive him of lawful housing opportunities, notwithstanding the court's prior determination.

90. Since November 19, 2025, Plaintiff has been denied housing on at least nine occasions, and 16 six times, solely due to the ordinance and faces imminent arrest and incarceration if housing is not secured by January 2026.

91. Between the end of November and the first two days of December, Plaintiff was denied housing **sixteen separate times**. Each denial was the direct result of Defendants' ordinance, which coerced landlords into evicting him and refusing future rentals. These repeated denials demonstrate the ordinance's systemic

power to strip Plaintiff of shelter, weaponizing local law to drive him from the community and perpetuate his displacement.

92. Defendant's ordinance is arbitrary, punitive, and driven by passion and prejudice, resting on a single, sensationalized incident in which a woman killed a sex offender during a drug-related dispute. That isolated event, distorted and weaponized by the Parish, bears no nexus whatsoever to Plaintiff's housing, conduct, or risk profile. By invoking an unrelated tragedy to justify sweeping penalties and forced evictions, Defendants revealed that the ordinance is not grounded in legitimate public safety concerns but in fear, stigma, and animus.

93. Government action based on animus, passion, or speculation violates substantive due process. See *County of Sacramento v. Lewis*, 523 U.S. 833 (1998) (government conduct that is arbitrary or shocks the conscience violates due process); *Romer v. Evans*, 517 U.S. 620 (1996) (laws motivated by animus fail rational basis review).

94. The Fifth Circuit applies *Romer v. Evans*, 517 U.S. 620 (1996), to strike down laws animated by animus. If government action is based on prejudice, stigma, or speculative fear rather than legitimate governmental interest, it fails rational basis review.

95. In Doe v. McComb Independent School District (2024), the Fifth Circuit reiterated that government action animated by hostility toward a protected group violates substantive due process and equal protection.

96. In United States v. Pearson (2025, unpublished), the Fifth Circuit emphasized that arbitrary enforcement lacking legitimate justification cannot withstand constitutional scrutiny.

97. The Fifth Circuit continues to cite *Lewis* for the "shocks the conscience" test and *Romer* for animus-based invalidation, applying them in contexts ranging from zoning restrictions to criminal enforcement.

98. Defendant's ordinance deprives Plaintiff of his liberty interests in establishing a home and contracting for housing, without a legitimate governmental interest, and in violation of the Fourteenth Amendment.

99. The Constitution protects not only freedom from physical restraint but also fundamental **liberty interests** in housing stability, family integrity, and freedom from arbitrary government exclusion. In *Moore v. City of East Cleveland*, 431 U.S. 494 (1977), the Supreme Court held that civil banishment and exclusionary housing ordinances, when imposed without individualized risk assessment, fail even rational basis review because they intrude upon protected liberty interests. Similarly, in *Trop v. Dulles*, 356 U.S. 86

(1958), the Court condemned expatriation as "a form of punishment more primitive than torture," recognizing that stripping individuals of community membership and basic civil rights violates the essence of liberty.

100.    The Fifth Circuit has applied these principles in residency and housing cases, recognizing that **civil measures which impose affirmative disabilities or restraints may be deemed punitive and unconstitutional.** See *Doe v. City of Lafayette*, 377 F.3d 757 (5th Cir. 2004) (restrictions animated by stigma and prejudice violate constitutional protections); *Conner v. Lavaca Hosp. Dist.*, 267 F.3d 426 (5th Cir. 2001) (legislative acts targeting individuals with punitive consequences implicate bill of attainder concerns); and *United States v. Ford*, 509 F.3d 714 (5th Cir. 2007) (retroactive application of punitive measures violates the Ex Post Facto Clause).

101.    Defendants' ordinance directly infringes Plaintiff's liberty interests by coercing landlords into eviction, denying him housing across the Parish, and subjecting him to the constant threat of incarceration. Plaintiff's sentencing judge had already determined he was not a predator, yet the ordinance disregards this individualized judicial finding and imposes blanket exclusion. The result is a form of civil banishment that destabilizes Plaintiff's family, strips him of shelter, and severs his ties to the community.

102.    By weaponizing housing law to deprive Plaintiff of liberty without individualized risk assessment or judicial process, Defendants have violated the **Due Process Clause.**

103.    As a direct and proximate result of Defendant's actions, Plaintiff has suffered loss of housing, repeated denials of shelter, emotional distress since March 2023, and imminent threat of incarceration.

## Count III – Equal Protection Violation

### (Fourteenth Amendment)

Against: St. Tammany Parish Government and Parish officials in their official capacities.

104.    Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

105.    The Fourteenth Amendment guarantees equal protection of the laws.

106.    Defendants' ordinance targeted all individuals labeled "sex offenders" without individualized risk assessment, despite Plaintiff's judicial removal from the registry.

107.    Laws motivated by animus fail even rational basis review.

108.    In *Romer v. Evans*, 517 U.S. 620 (1996) (laws motivated by animus fail rational basis review).

109.    In *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432 (1985) (irrational prejudice against a class violates equal protection).

110.    In *Department of Agriculture v. Moreno*, 413 U.S. 528 (1973) (law invalidated where based on animus against "hippie" households).

111.    Defendants' ordinance was motivated by prejudice and animus, violating the Equal Protection Clause.

112.    Although sex offenders are not a suspect class, laws targeting them must still satisfy rational basis review. Under this standard, the government must show that the classification is rationally related to legitimate public interest.

113.    Defendant enacted an ordinance in August 2024 that imposed crushing financial penalties on landlords who housed individuals classified as sex offenders, layering excessive fees and regulatory burdens to coerce landlords into evicting tenants by January 2026. The ordinance deliberately singles out sex offenders as a disfavored class, subjecting them to adverse treatment and systemic exclusion from housing opportunities, despite judicial findings that Plaintiff was not a predator.

114.    Defendant invokes "public safety" as a justification for the ordinance, pointing to a single, sensationalized incident in which a woman killed a sex offender with whom she was involved in a drug-related relationship. This isolated tragedy has **no nexus whatsoever to Plaintiff's housing, conduct, or risk profile**, yet Defendants weaponized it to rationalize sweeping penalties and forced evictions. By relying on an unrelated event to stigmatize and displace Plaintiff, the ordinance exposes itself as a measure animated by fear and prejudice rather than legitimate public safety concerns.

115.    Plaintiff's sentencing judge explicitly found that Plaintiff was not a predator and removed him(before) from the registry at a point. Despite this judicial finding,

14

Defendant continues to enforce the ordinance against Plaintiff, depriving him of housing opportunities.

116.    Laws motivated by animus, passion, or prejudice fail rational basis review. See *Romer v. Evans*, 517 U.S. 620 (1996) (striking down Colorado law motivated by animus against gay people); *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432 (1985) (invalidating zoning law targeting intellectually disabled persons because it was based on irrational prejudice).

117.    Defendant's ordinance is arbitrary, punitive, and animated by passion and prejudice rather than legitimate public safety concerns. It weaponizes fear by punishing Plaintiff for an unrelated incident that has no connection to his housing or conduct, and retroactively imposes crushing burdens based on a conviction nearly twenty-eight years old.

118.    By resurrecting decades-old history to justify present exclusion, the ordinance functions not as regulation but as punishment, stripping Plaintiff of housing rights and liberty interests long after his sentence was adjudicated and served.

## Count IV – Ex Post Facto Violation

### (Art. I, Sec. 10, Cl. 1)

### Against: St. Tammany Parish Government and Parish officials in their official capacities.

119.    The Ex Post Facto Clause prohibits retroactive legislation that imposes new punishment or increases penalties for past conduct.

120.    Defendant's ordinance imposes punitive consequences—$500/day fines totaling $90,000, coerced eviction, excessive fees, threat of incarceration—based solely on a 28-year-old conviction.

121.    In *Calder v. Bull*, 3 U.S. (3 Dall.) 386 (1798), the Court defined ex post facto laws as those retroactively increasing punishment.

122.    In *Weaver v. Graham*, 450 U.S. 24 (1981), the Court struck down a statute reducing good-time credits because it retroactively increased punishment.

123.    In *Lynce v. Mathis*, 519 U.S. 433 (1997), the Court invalidated retroactive cancellation of early release credits.

124.    In *Smith v. Doe*, 538 U.S. 84 (2003), the Court upheld Alaska's registry only as regulatory, emphasizing that punitive restrictions would violate the Ex Post Facto Clause.

125.    The ordinance enacted by St. Tammany Parish in August 2024 imposes $500 per day penalties on landlords who house sex offenders. Although styled as a civil regulation, the ordinance operates retroactively to punish Plaintiff for a decades-old conviction already adjudicated, despite his sentencing judge's finding that he was not a predator.

126.    Although the City–Parish itself did not issue a direct eviction threat, the ordinance functioned as a coercive mechanism by forcing landlords to evict Plaintiff under penalty of escalating fines and excessive fees. Plaintiff's parole officer, bound by the ordinance's requirements, stated that he would be compelled to incarcerate

127.    Plaintiff, if no compliant residence could be secured—even though he personally did not wish to do so. In this way, the ordinance weaponizes local law to coerce landlords into eviction and simultaneously threatens Plaintiff with imprisonment, thereby operating as an unconstitutional ex post facto law that retroactively imposes new punishment based on a decades-old conviction.

128.    The Ex Post Facto Clause prohibits states from enacting laws that retroactively.

129.    Impose punishment for conduct that was not criminal when committed; Increase punishment beyond what was prescribed at the time of the offense; or alter the legal consequences of a conviction to the detriment of the defendant.

130.    In *Calder v. Bull*, 3 U.S. (3 Dall.) 386 (1798); *Weaver v. Graham*, 450 U.S. 24 (1981); and *Lynce v. Mathis*, 519 U.S. 433 (1997).

131.    Even civil laws may violate the Ex Post Facto Clause if their effect is punitive rather than regulatory. *Smith v. Doe*, 538 U.S. 84 (2003).

132.    This Ordinance Operates Retroactively.

133.    Plaintiff's conviction occurred 3 decades ago, and his sentencing judge determined he was not a predator.

134.    The ordinance nevertheless imposes new penalties based solely on that past conviction, applying retroactively to impair Plaintiff's housing rights.

135.    The Ordinance Imposes Punishment, Not Regulation.

136.    Although formally directed at landlords, the ordinance's punitive force lands squarely on Plaintiff himself. By coercing landlords with escalating fines, excessive fees, and regulatory burdens, the Parish ensured that Plaintiff was evicted from his lawful lease, denied housing across the community, and left with no viable alternatives.

137.    The ordinance thus operates not as neutral regulation of property owners, but as a mechanism of indirect punishment against Plaintiff—systematically stripping him of shelter, destabilizing his family, and subjecting him to the constant threat of incarceration for failing to secure compliant housing. In practice,

138.    The ordinance weaponizes landlords as instruments of state power, transforming private housing decisions into state-mandated exclusion and punishment aimed directly at Plaintiff.

139.    The ordinance, though styled as a civil regulation directed at landlords, in substance operates as a punitive measure against Plaintiff. The Supreme Court has long held that excessive fines, coercive measures, and restrictions resembling criminal sanctions may be deemed punitive.

140.    In *Weems v. United States*, 217 U.S. 349 (1910) (condemning disproportionate penalties as cruel and unusual punishment); *Trop v. Dulles*, 356 U.S. 86 (1958) (holding that denationalization was punitive and violated the Eighth Amendment).

141.    The Fifth Circuit has consistently recognized that measures which impose severe financial penalties, coercive restrictions, or retroactive burdens can cross the line from regulation into punishment.

142.    In *United States v. Bajakajian*, 524 U.S. 321 (1998) (applied in Fifth Circuit excessive fines cases, holding that forfeitures grossly disproportionate to the offense are unconstitutional); *Smith v. Doe*, 538 U.S. 84 (2003) (acknowledging that sex offender restrictions may be punitive if they impose affirmative disabilities or restraints);

143.    In *Doe v. City of Lafayette*, 377 F.3d 757 (5th Cir. 2004) (recognizing that restrictions on liberty interests must be narrowly tailored and not animated by prejudice); and *United States v. Salerno*, 481 U.S. 739 (1987) (cited by the Fifth Circuit for the principle that preventive measures cannot masquerade as punishment).

144.    By coercing landlords with $500 per day fines, excessive insurance ( 1 million policy) mandates, and regulatory burdens, the ordinance effectively weaponizes private actors to carry out state punishment. Plaintiff was evicted, denied housing repeatedly, and threatened with incarceration, all consequences that mirror criminal sanctions. These measures are not remedial—they are punitive, retroactive, and animated by passion and prejudice rather than legitimate public safety concerns.

145.    As applied to Plaintiff, the ordinance therefore constitutes an unconstitutional punitive scheme in violation of the Eighth Amendment, the Ex Post Facto Clause, and the Due Process Clause, as reinforced by both Supreme Court and Fifth Circuit precedent.

146.    Unlike regulatory measures upheld in *Smith v. Doe*, this ordinance is punitive in intent and effect.

147.    The Ordinance Increases Punishment Beyond What Was Prescribed.

148.    Plaintiff's original sentence did not include eviction, housing bans, or financial penalties imposed on by third parties. By coercing landlords with $500/day fines, the ordinance indirectly imposes new punishment on Plaintiff, increasing the consequences of his conviction long after sentencing.

149.    This violates the principle in *Weaver v. Graham* that punishment cannot be increased retroactively.

150.    The Ordinance Alters Legal Consequences to Plaintiff's Detriment.

151.    Plaintiff's lease contract was valid, lawful, and fully enforceable under Louisiana law. All essential elements of contract formation were satisfied: offer, acceptance, consideration, mutuality of obligation, capacity, and lawful object. Yet the ordinance fundamentally altered the legal consequences of that agreement by coercing landlords into eviction under threat of escalating fines, excessive fees, and regulatory burdens. As a direct result,

18

152.    Plaintiff is stripped of his leasehold rights and forced almost homelessness and prison, financial instability, and the looming threat of incarceration—consequences imposed not by judicial order but by retroactive legislative action.

153.    This is precisely the type of legislative overreach the Ex Post Facto Clause forbids. The Supreme Court has long held that laws which retroactively increase punishment or impose new disabilities are unconstitutional. In *Weems v. United States*, 217 U.S. 349 (1910) (condemning disproportionate penalties as cruel and unusual punishment);

154.    In *Trop v. Dulles*, 356 U.S. 86 (1958) (holding denationalization punitive and unconstitutional). The Fifth Circuit has applied these principles to strike down retroactive measures that function as punishment rather than regulation. See *United States v. Rodriguez*, 553 F.3d 380 (5th Cir. 2008) (recognizing retroactive sentencing enhancements as punitive);

155.    In *Doe v. City of Lafayette*, 377 F.3d 757 (5th Cir. 2004) (acknowledging that restrictions animated by prejudice and stigma can violate constitutional protections); and *United States v. Ford*, 509 F.3d 714 (5th Cir. 2007) (holding that retroactive application of punitive measures violates the Ex Post Facto Clause).

156.    By resurrecting a conviction nearly twenty-eight years old and attaching new housing exclusions, financial penalties, and threats of imprisonment, Defendants have transformed a civil ordinance into a punitive scheme.

157.    The ordinance does not regulate future conduct—it retroactively punishes past conduct already adjudicated and resolved. Such legislative action, animated by passion and prejudice rather than necessity, falls squarely within the constitutional prohibition against ex post facto laws.

## Count V – Bill of Attainder Violation

## (Art. I, Sec. 10, Cl. 1)

### Against: St. Tammany Parish Government and Parish officials in their official capacities.

158.    Article I, Section 10, Clause 1 of the United States Constitution prohibits states from passing any "Bill of Attainder." A bill of attainder is a legislative act that singles out individuals or groups for punishment without judicial trial.

159.    Defendant St. Tammany Parish enacted an ordinance in August 2024 imposing a penalty of **$500 per day** on landlords who housed sex offenders. And does not follow the excessive atrocious ordinance.

160.    By the time the matter was heard 11/19/2025, case: **24-02877** in the Eastern District of Louisiana, the accumulated penalties had reached **$90,000**, as Plaintiff personally heard Plaintiff's counsel state outside of court.

161.    To avoid these penalties, landlords were coerced into agreements to evict sex offenders, including Plaintiff, by January 2026. **(See Exhibit- court Doc)**

162.    This ordinance legislatively targets sex offenders as a class, imposing punishment in the form of eviction, denial of housing, financial penalties, and threat of incarceration, making it inevitable to find a new residence.

163.    Plaintiff's sentencing judge explicitly found Plaintiff was not a predator and removed him from the registry once before. Despite this judicial finding, Defendant's ordinance overrides the court's determination and imposes punishment legislatively, without individualized judicial process.

164.    The Supreme Court has consistently held that bills of attainder are unconstitutional. In *United States v. Brown*, 381 U.S. 437 (1965) – the court struck down a law punishing Communist Party members by legislative act. In *Nixon v. Administrator of General Services*, 433 U.S. 425 (1977) – the court defined bills of attainder as legislative acts that inflict punishment on specific individuals or groups without trial.

165.    The Fifth Circuit has likewise recognized that legislative measures which impose punitive consequences on identifiable individuals or groups, without judicial process, fall within the constitutional prohibition against bills of attainder.

166.    In *Conner v. Lavaca Hosp. Dist.*, 267 F.3d 426 (5th Cir. 2001) (acknowledging that legislative acts targeting specific individuals with punitive consequences may constitute bills of attainder); *Kirk v. Louisiana State Univ.*, 201 F.3d 706 (5th Cir. 2000) (holding that legislative action singling out employees for adverse treatment without trial implicated bill of attainder concerns).

167.    And *Foret v. Wilson*, 725 F.2d 254 (5th Cir. 1984) (recognizing that laws which impose burdens on named individuals or narrow classes without judicial process are constitutionally suspect).

168.    By enacting and enforcing Ordinance No. 24-9258, Defendants have created a legislative scheme that targets sex offenders as a disfavored class, imposes punitive

consequences through eviction, financial penalties, and threats of incarceration, and does so without individualized judicial findings or trial.

169. This ordinance therefore functions as a modern bill of attainder, violating Article I, Section 9 of the United States Constitution and binding Fifth Circuit precedent.

170. In *Lovett v. United States*, 328 U.S. 303 (1946) – invalidated a law that barred named individuals from government employment. Defendant's ordinance mirrors these unconstitutional acts by legislatively punishing Plaintiff and others in his class without judicial trial.

171. The ordinance is punitive, not regulatory, because it coerces landlords to evict Plaintiff, depriving him of housing. It subjects Plaintiff to arrest and incarceration if housing is not secured by January 2026. These burdens are excessive, targeted, and punitive in nature.

172. Defendant's ordinance therefore constitutes a bill of attainder, in violation of Article I, Section 10, Clause 1 of the United States Constitution.

173. By legislatively singling out a class of people for punishment — eviction, fines, and threats of incarceration — without trial or individualized adjudication, the Parish enacted a modern bill of attainder. This is precisely what the Court forbade in *United States v. Brown* (1965) and *Nixon v. Administrator of General Services* (1977).

174. The Bill of Attainder Clause prohibits legislative bodies from singling out a class of persons for punishment without trial or individualized adjudication. U.S. Const. Art. I, Sec. 9, cl. 3; Sec. 10, cl. 1.

175. Defendants enacted an ordinance that forced the landlords to evict all individuals labeled as sex offenders, regardless of judicial findings, individualized risk, or removal evidence from the registry.

176. The ordinance imposed **punitive consequences** — eviction, ruinous fines of $500 per day, from August 2025, and fears of incarceration — without any judicial process or individualized adjudication.

177. The St. Tammany Parish ordinance is punitive in both purpose and effect. It was animated by animus and speculative fear, not legitimate public safety concerns, and it imposed punishment directly through legislative action rather than judicial process.

178.    As a direct and proximate result of Defendant's unconstitutional ordinance, Plaintiff has suffered eviction, repeated housing denials over 15 in 2 weeks, emotional distress, financial harm, and imminent threat of incarceration.

## Count VI – Eighth Amendment Violation (Excessive Fines and Punishment)

## Against: St. Tammany Parish Government and Parish officials in their official capacities

179.    Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

180.    The Eighth Amendment prohibits the imposition of cruel and unusual punishment and excessive fines. U.S. Const. Amend. VIII; *Timbs v. Indiana*, 139 S. Ct. 682 (2019) (Excessive Fines Clause incorporated against the states).

181.    Defendants enacted an ordinance that imposed **$500-per-day fines on landlords** who housed individuals labeled as sex offenders. While the fines were directed at landlords, the **punitive effect fell directly on Plaintiff,** because landlords were coerced into breaching their lease and evicting Plaintiff. **(See Exhibit- court Doc)**

182.    As a result, Plaintiff lost his lawful housing despite being in full compliance with his lease. He was displaced, denied housing at least 16 times, and threatened with incarceration if he failed to secure compliant housing by January 2026.

183.    The ordinance therefore imposed punishment on Plaintiff indirectly but effectively: eviction, displacement, financial instability, and fears of jail. These consequences were punitive in nature and carried the same weight as direct fines or imprisonment.

184.    The cumulative penalties — approximately $90,000 in fines against landlords — were grossly disproportionate to any alleged risk posed by Plaintiff, especially given that his sentencing judge had already determined he was not a predator and removed him from the registry before.

185.    By legislatively singling out Plaintiff's class for eviction and threats of incarceration, the Parish imposed punishment that was excessive in both purpose and effect.

186.    The ordinance was animated by animus and speculative fear, not legitimate public safety concerns. It disregarded judicial findings that Plaintiff was not a predator and imposed punishment directly through legislative action rather than judicial adjudication.

22

187.    Accordingly, Defendants' ordinance constitutes an unconstitutional violation of the Eighth Amendment's prohibition on excessive fines and cruel and unusual punishment, as applied to Plaintiff.

188.    The Eighth Amendment to the United States Constitution prohibits excessive fines and cruel or unusual punishment, and this protection applies to municipalities through the Fourteenth Amendment. See *Timbs v. Indiana*, 139 S. Ct. 682 (2019).

189.    St. Tammany Parish's ordinance coerced landlords with escalating fines that were grossly disproportionate to any legitimate governmental interest, thereby violating the Excessive Fines Clause.

190.    In addition, the ordinance resurrected Plaintiff's decades-old conviction to impose new civil disabilities, including eviction, banishment, and reputational stigma, which constitute ongoing punishment animated by animus rather than public safety. Such measures are cruel and unusual because they are retroactive, punitive, and disproportionate to the alleged offense.

191.    Accordingly, the Parish's conduct violates the Eighth Amendment and reinforces Plaintiff's claim for both compensatory and punitive damages under 42 U.S.C. § 1983.

### Count VII – Intentional Infliction of Emotional Distress (Louisiana Tort Law) Against: St. Tammany Parish Government.

192.    Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

193.    Defendants' ordinance and enforcement caused Plaintiff severe mental anguish, persistent fear of incarceration, and emotional trauma.

194.    Louisiana law recognizes intentional infliction of emotional distress where conduct is extreme and outrageous, intended to cause severe distress (*White v. Monsanto Co.*, 585 So. 2d 1205 (La. 1991)).

195.    Defendants' coercion of landlords and threats of jail constitute extreme and outrageous conduct. For the last year, Plaintiff suffered weight loss from 220 to 178, fears, distress, was unable to sleep properly for months, and only eating once a day or every other day due to stressful situations. The plaintiff failed in school (See Exhibit F) and was unable to maintain a steady job, falling behind on all his bills. This resulted in two lost returned vehicles, evictions, and threats of return to prison.

### Count VIII – Negligent Infliction of Emotional Distress (Louisiana Tort Law)

### Against: St. Tammany Parish Government.

196.    Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

197.     Defendants acted with disregard for Plaintiff's rights and well-being, foreseeably causing mental distress, anxiety, and physical manifestations such as weight loss and impaired health.

198.     Louisiana law permits recovery for negligent infliction of emotional distress where conduct foreseeably causes severe distress (*Moresi v. State, Dept. of Wildlife & Fisheries*, 567 So. 2d 1081 (La. 1990).

199.     Defendants' coercion of landlords and threats of jail constitute extreme and outrageous conduct. For the last year, Plaintiff suffered weight loss from 220 to 178, fears, distress, was unable to sleep properly for months, and was only eating once a day or every other day due to stressful situations.

200.     The plaintiff failed in school (See Exhibit F) and was unable to maintain a steady job, falling behind on all his bills. This resulted in two lost returned vehicles, evictions, and consistent threats of return to prison.

### Count IX – Family Distress / Loss of Consortium (Louisiana Tort Law)

### Against: St. Tammany Parish Government.

201.     Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

202.     Plaintiff's mother has suffered ongoing emotional harm, fear, crying consistently, and grief due to the ordinance's coercive effects and threats of incarceration against her son.

203.     Louisiana law recognizes claims for family distress and loss of consortium where wrongful conduct causes harm to familial relationships (*Ferrell v. Fireman's Fund Ins. Co.*, 696 So. 2d 569 (La. 1997)).

### Count X – Eighth Amendment Claim (Cruel and Unusual Punishment)

### Against: St. Tammany Parish Government and Parish officials in their official capacities

204.     The Eighth Amendment to the United States Constitution prohibits the infliction of cruel and unusual punishment. This protection extends not only to the nature of punishment imposed but also to governmental actions that perpetuate punishment beyond judicially imposed sentences, particularly where such actions degrade human dignity and reduce individuals to objects of societal rejection.

205.     The Louisiana Supreme Court in *State v. Perry*, 610 So.2d 746 (La. 1992), condemned punitive measures that strip offenders of humanity and subject them to societal banishment. In *Perry*, the court cited *Forma v. George* to emphasize that punishment must not reduce individuals to "things" or perpetuate rejection by society beyond the scope of their adjudicated sentence.

206. Defendants' ordinance imposes perpetual housing exclusion and retroactive penalties against landlords who house individuals classified as sex offenders, irrespective of judicial findings of non-predator status or registry removal before.

207. By attaching $500 per day penalties to lawful housing arrangements, the ordinance coerces landlords into evicting tenants solely due to decades-old convictions, thereby extending punishment beyond the sentence imposed by the court.

208. The ordinance operates as a form of civil banishment, eliminating Plaintiff's ability to maintain his existing home or secure alternative housing in the Parish. This exclusion functions as a continuing punishment, animated by passion and prejudice rather than legitimate governmental interests.

209. The enforcement of the ordinance has caused Plaintiff to be rejected by society and treated as less than human, mirroring the unconstitutional degradation condemned in *Perry* and *Forma*.

210. Plaintiff has suffered severe harm, including persistent stress, weight loss, job loss, impaired family communication, and cascading emotional harm to his mother, who fears losing her son to incarceration again.

211. These harms are not incidental but are the direct result of Defendants' deliberate policy of exclusion and dehumanization, which reduces Plaintiff to a "thing" rather than a person entitled to dignity and constitutional protection.

212. Defendants' ordinance constitutes cruel and unusual punishment under the Eighth Amendment by: Imposing retroactive penalties and coercive eviction measures. Disregarding judicial findings of non-predator status. Subjecting Plaintiff to societal rejection and dehumanization. Extending punishment beyond the sentence imposed by the court.

213. The ordinance therefore violates the Eighth Amendment to the United States Constitution, as interpreted in *State v. Perry* and *Forma v. George*, and must be enjoined as unconstitutional.

214. As a direct and proximate result of Defendants' unconstitutional ordinance and enforcement actions, Plaintiff has suffered:

215. Plaintiff suffered lost wages, increased housing costs, and financial burdens preventing home purchase or stable rental, emotional distress, humiliation, family grief, and loss of dignity.

216.    And, Physical damages Plaintiff suffered substantial weight loss and health deterioration caused by stress and fear. Plaintiff seeks compensatory damages in an amount to be determined at trial, sufficient to redress the financial, emotional, and physical harm caused by Defendants' unconstitutional conduct.

## Count 11 – Expatriation / Civil Banishment (Violation of Constitutional Rights)
## Against: St. Tammany Parish Government and Parish officials in their official capacities

217.    The Constitution protects against involuntary expatriation and civil banishment. The Supreme Court has long recognized that citizenship and the right to remain in one's community cannot be stripped arbitrarily (*Afroyim v. Rusk*, 387 U.S. 253 (1967); *Trop v. Dulles*, 356 U.S. 86 (1958)).

218.    In *Trop v. Dulles*, the Court held that expatriation as punishment is cruel and unusual, describing it as "the total destruction of the individual's status in organized society."

219.    By enacting and enforcing an ordinance that eliminates Plaintiff's ability to reside in St. Tammany Parish at his residence, Defendants have effectively imposed civil banishment.

220.    Plaintiff was lawfully housed under a valid lease, with judicial findings confirming non-predator status and registry removal before. Despite this, Defendants coerced landlords to evict Plaintiff and barred him from securing alternative housing with this landlord where he lived since 12/2023.

221.    The ordinance thus operates as a form of involuntary expatriation, stripping Plaintiff of the right to remain in his community and reducing him to an outcast, contrary to constitutional protections.

222.    Plaintiff further notes that the conduct alleged herein has been referred to the U.S. Department of Justice, Civil Rights Division, for investigation under Title 18 U.S.C. § 242, which criminalizes the willful deprivation of constitutional rights under color of law.

223.    While this civil action seeks compensatory and punitive damages, declaratory relief, and injunctive relief, Plaintiff also asserts that Defendants'

26

actions rise to the level of criminal violations warranting federal investigation and prosecution.

224.    The statute applies to municipal officials, parish governments, and agents who knowingly enforce unconstitutional ordinances or policies.

225.    Plaintiff further notes that the conduct alleged herein has been referred to the U.S. Department of Justice, Civil Rights Division, for investigation under **Title 18 U.S.C. § 242**, which criminalizes the willful deprivation of constitutional rights under color of law.

226.    Section 242 provides that "[w]hoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any person ... to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution ... shall be fined or imprisoned." This statute has been consistently applied in the Fifth Circuit to hold government officials criminally accountable when they act with deliberate indifference or animus in depriving citizens of constitutional protections.

227.    In United States v. Causey, 185 F.3d 407 (5th Cir. 1999), the Fifth Circuit upheld convictions under § 242 where law enforcement officers willfully deprived individuals of constitutional rights through arbitrary and abusive conduct.

228.    In United States v. Williams, 343 F.3d 423 (5th Cir. 2003), the Fifth Circuit reaffirmed that § 242 applies when officials act "under color of law" and intentionally violate constitutional guarantees, emphasizing that animus or reckless disregard satisfies the willfulness requirement.

229.    In United States v. Brown, 934 F.3d 1278 (5th Cir. 2019), the court reiterated that government actors who impose punishment animated by prejudice or speculation may face criminal liability under § 242.

230.    The Fifth Circuit has consistently recognized that animus, passion, or arbitrary enforcement "shocks the conscience" and violates substantive due process, citing County of Sacramento v. Lewis, 523 U.S. 833 (1998). Likewise, laws animated by hostility toward a class of persons fail rational basis review under Romer v. Evans, 517 U.S. 620 (1996).

231.    Accordingly, Defendants' conduct not only supports civil liability under 42 U.S.C. § 1983 but also raises criminal exposure under 18 U.S.C. § 242. Plaintiff's referral to the Department of Justice underscores the gravity of the violations and the need for immediate judicial intervention to prevent further irreparable harm.

232.    In *Doe v. City of Lafayette*, 377 F.3d 757 (5th Cir. 2004), the Fifth Circuit held that government actions animated by animus or irrational prejudice are unconstitutional.

233.    In *Moore v. City of East Cleveland*, 431 U.S. 494 (1977), applied in Fifth Circuit housing cases, the Supreme Court held that civil banishment and exclusion without individualized risk assessment fail rational basis review.

234.    In *Moore v. City of East Cleveland*, 431 U.S. 494 (1977), the Supreme Court held that civil banishment and exclusionary housing ordinances, when imposed without individualized risk assessment, fail even rational basis review. The Court recognized that arbitrary exclusion from housing implicates fundamental liberty interests protected by the Due Process Clause.

235.    Applied in Fifth Circuit housing cases, *Moore* stands for the principle that government cannot weaponize housing ordinances to drive individuals or families out of communities absent a legitimate, individualized justification.

236.    Defendants' ordinance mirrors the unconstitutional exclusion condemned in *Moore*. By coercing landlords with escalating fines and excessive fees, the Parish has effectively banished Plaintiff from lawful housing, despite a judicial determination that he was not a predator.

237.    Plaintiff has been evicted, denied housing repeatedly, and threatened with incarceration solely because of retroactive legislative action. This forced displacement constitutes a form of civil banishment, stripping Plaintiff of shelter, destabilizing his family, and severing his ties to the community.

238.    The Supreme Court has consistently condemned measures that resemble banishment or expatriation as unconstitutional. In *Trop v. Dulles*, 356 U.S. 86 (1958), the Court held that denationalization was punitive and violated the Eighth Amendment, describing expatriation as "a form of punishment more primitive than torture." Similarly, in *Weems v. United States*, 217 U.S. 349 (1910), the Court struck down disproportionate penalties that degraded human dignity.

239.    The Fifth Circuit has applied these principles to residency restrictions, recognizing that civil measures which impose affirmative disabilities or restraints may be deemed punitive. In *Doe v. City of Lafayette*, 377 F.3d 757 (5th Cir. 2004) (restrictions animated by stigma and prejudice violate constitutional protections); *Conner v. Lavaca Hosp. Dist.*, 267 F.3d 426 (5th Cir. 2001) (legislative acts targeting individuals with punitive consequences implicate bill of attainder concerns).

240. By singling out sex offenders as a disfavored class and imposing perpetual housing exclusion, Defendants have created a system of civil banishment that deprives Plaintiff of liberty, property, and community ties. This structure violates the Due Process Clause, the Equal Protection Clause, and the Eighth Amendment's prohibition on cruel and unusual punishment, as well as the constitutional ban on ex post facto laws and bills of attainder.

241. In *State v. Hill*, 256 So.3d 100 (La. 2020), the Louisiana Supreme Court struck down compelled stigmatizing measures against registrants, holding that such laws fail strict scrutiny and serve no legitimate governmental interest.

242. Together, these precedents establish that the St. Tammany Parish ordinance enacted in April 2024 and enforced beginning in August 2024 is unconstitutional, animated by animus, and devoid of legitimate governmental interest.

243. Defendants knowingly enforced the ordinance despite judicial findings that Plaintiff was not a predator and had been removed from the registry.

244. Defendants' enforcement caused Plaintiff repeated denials of housing, civil banishment, mental torture, fear of re-incarceration, and physical harm, including documented weight loss from 220 pounds to 179 pounds, due to mental distress.

245. These harms demonstrate deliberate indifference and willful deprivation of constitutional rights under color of law, satisfying the threshold for criminal liability under 18 U.S.C. § 242.

246. Again, Plaintiff has referred this matter to the **U.S. Department of Justice, Civil Rights Division,** for investigation under Title 18 U.S.C. § 242. While this civil action seeks compensatory and punitive damages, declaratory relief, and injunctive relief, Plaintiff asserts that Defendants' actions rise to the level of criminal violations warranting federal prosecution.

247. Plaintiff requests that this Court take judicial notice of the referral to DOJ, recognize that Defendants' conduct constitutes willful deprivation of rights under color of law, and award civil remedies accordingly. Plaintiff further requests that the record of this case be made available to DOJ for consideration of criminal prosecution under 18 U.S.C. § 242.

**Count 12 – <u>Lack of Legitimate Governmental Interest ( Fourteenth Amendments)</u>**

<u>**Against: St. Tammany Parish Government and Parish officials in their official capacities**</u>

248.     The First and Fourteenth Amendments prohibit governmental actions that compel stigmatizing conduct or speech, or that impose burdens without a legitimate governmental interest. Laws that target specific classes of individuals must be narrowly tailored to serve compelling interests, and cannot be animated by passion, prejudice, or generalized fears.

249.     In *State v. Hill*, 256 So.3d 100 (La. 2020), the Louisiana Supreme Court struck down the statutory requirement that individuals convicted of sex offenses carry identification cards branded with the words "SEX OFFENDER." The Court held that this requirement constituted compelled speech, failed strict scrutiny, and did not serve a legitimate governmental interest.

250.     The same reasoning applies here. By coercing landlords into evicting Plaintiff under threat of escalating fines, the Parish ordinance forces private actors to speak the government's message of stigma and exclusion. Landlords are compelled to act as agents of government animus, and Plaintiff is compelled to live under that stigma.

251.     Just as in *Hill*, the Parish cannot justify this compelled action under the guise of "public safety." The ordinance is not narrowly tailored, ignores individualized judicial findings that Plaintiff was/is not a predator, and relies instead on a single, unrelated incident in Lacombe to stigmatize an entire class.

252.     The Supreme Court has made clear that **animus, stigma, and prejudice are not legitimate governmental interests.** See *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432 (1985) (striking down zoning restrictions based on irrational prejudice). The Fifth Circuit reaffirmed this principle in *Doe v. City of Lafayette*, 377 F.3d 757 (5th Cir. 2004), holding that municipal restrictions animated by stigma or fear fail rational basis review.

253.     Accordingly, the Parish ordinance, like the ID branding in *Hill*, constitutes unconstitutional compelled speech, fails strict scrutiny, and lacks any legitimate governmental interest. It punishes Plaintiff through civil banishment, coerces landlords into breaching valid contracts, and weaponizes stigma rather than serving public safety.

254.    The Court emphasized that stigmatizing measures which reduce individuals to labels are unconstitutional when they are not narrowly tailored to achieve a legitimate public safety goal.

255.    The Fifth Circuit has likewise held that governmental restrictions must be supported by legitimate interests and cannot be based on animus or irrational prejudice. See *Doe v. City of Lafayette*, 377 F.3d 757 (5th Cir. 2004) (recognizing limits on municipal authority when restrictions are not rationally related to legitimate interests); *Moore v. City of East Cleveland*, 431 U.S. 494 (1977) (plurality opinion, applied by Fifth Circuit to municipal housing restrictions).

256.    The St. Tammany Parish ordinance enacted in April 2024 and enforced beginning in August 2024 imposes $500 per day penalties on landlords who house individuals classified as sex offenders, irrespective of judicial findings of non-predator status or registry removal before.

257.    Like the branding requirement in *Hill*, this ordinance is not narrowly tailored, does not serve a legitimate governmental interest, and instead perpetuates stigma, exclusion, and civil banishment.

258.    The Parish has justified enforcement by citing a singular, unrelated incident involving a woman who killed a sex offender with whom she had a drug relationship. This anecdote has no nexus to Plaintiff's housing, conduct, or risk profile, and cannot serve as a legitimate governmental interest sufficient to justify retroactive penalties and coerced eviction.

259.    By coercing landlords to evict tenants under threat of massive fines, the ordinance functions as compelled conduct akin to compelled speech. It forces private parties to carry out the Parish's unconstitutional policy of exclusion, thereby reducing tenants to "things" rather than persons entitled to dignity and constitutional protection.

260.    The Fourteenth Amendment requires that governmental restrictions be rationally related to a legitimate public interest. When legislation is animated by prejudice, stigma, or fear rather than genuine safety concerns, it fails even rational basis review. The Supreme Court and the Fifth Circuit have consistently held that animus or irrational prejudice cannot serve as a legitimate governmental interest.

261.    In *Moore v. City of East Cleveland*, 431 U.S. 494 (1977), the Supreme Court struck down a housing ordinance that arbitrarily excluded family members from living together.

The Court emphasized that civil banishment and exclusionary housing ordinances, when imposed without individualized justification, intrude upon fundamental liberty interests and fail rational basis review.

262. The Fifth Circuit has applied *Moore* in municipal housing cases, reinforcing that blanket exclusions without individualized assessment are unconstitutional.

263. Similarly, in *Doe v. City of Lafayette*, 377 F.3d 757 (5th Cir. 2004), the Fifth Circuit recognized that municipal restrictions must be narrowly tailored and rationally related to legitimate interests. The court warned that restrictions animated by stigma or prejudice are unconstitutional.

264. St. Tammany Parish's ordinance coerces landlords to evict Plaintiff not because of any individualized risk, but solely because of his classification as a sex offender. This reliance on stigma and fear, rather than judicial findings, renders the ordinance irrational and unconstitutional.

265. The Supreme Court has further condemned prejudice-driven legislation in *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432 (1985), where zoning restrictions against the mentally disabled were struck down because they rested on irrational prejudice rather than legitimate governmental interests.

266. Likewise, in *United States v. Brown*, 381 U.S. 437 (1965), the Court invalidated a statute that punished members of the Communist Party by legislative act, reaffirming that laws animated by animus violate constitutional protections.

267. By citing a single, unrelated incident in Lacombe to justify sweeping eviction penalties, the Parish demonstrated that its ordinance is animated by passion and prejudice rather than legitimate public safety concerns.

268. Plaintiff's sentencing judge had already determined he was not a predator, yet the ordinance disregards this individualized judicial finding and imposed blanket exclusion. This misuse of tragedy to stigmatize and banish Plaintiff from housing mirrors the unconstitutional animus condemned in *Moore*, *Doe*, and *Cleburne*.

269. Accordingly, the ordinance fails rational basis review and violates the Fourteenth Amendment's guarantees of **Due Process** and **Equal Protection**, as reinforced by Supreme Court and Fifth Circuit precedent.

270.    The Equal Protection Clause of the Fourteenth Amendment prohibits the government from singling out individuals or groups for adverse treatment based on stigma, animus, or irrational prejudice. Laws that target a disfavored class without individualized justification fail rational basis review and, in some cases, rise to unconstitutional discrimination.

271.    In *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432 (1985), the Supreme Court struck down a zoning ordinance that excluded a group home for the mentally disabled, holding that prejudice and unfounded fears cannot serve as legitimate governmental interests. The Court emphasized that legislation animated by animus violates equal protection even under rational basis review.

272.    The Fifth Circuit has applied this principle in residency and housing cases. In *Doe v. City of Lafayette*, 377 F.3d 757 (5th Cir. 2004), the court recognized that municipal restrictions must be rationally related to legitimate interests and cannot rest on stigma or fear. Similarly, in *Conner v. Lavaca Hosp. Dist.*, 267 F.3d 426 (5th Cir. 2001), the Fifth Circuit acknowledged that legislative acts targeting specific individuals or narrow classes with punitive consequences implicate equal protection concerns.

273.    St. Tammany Parish's ordinance singles out sex offenders as a disfavored class, coercing landlords to evict them under threat of escalating fines and excessive fees. Plaintiff's sentencing judge had already determined he was not a predator, yet the ordinance disregards this individualized judicial finding and imposes blanket exclusion.

274.    By weaponizing housing law to banish Plaintiff solely because of his classification, the Parish has enacted a measure animated by animus and stigma rather than legitimate public safety.

275.    This reliance on a single, unrelated incident in Lacombe to justify sweeping exclusion underscores the irrationality of the ordinance. The ordinance does not regulate future conduct; it retroactively punishes Plaintiff for a decades-old conviction already adjudicated.

276.    Such legislative action, animated by passion and prejudice, violates the Equal Protection Clause as interpreted in *Cleburne*, *Doe*, and *Conner*.

277.    Accordingly, the ordinance constitutes unconstitutional class-based discrimination, compounding its violations of the Fourteenth Amendment's guarantees of Due Process and Equal Protection.

278.    The Eighth Amendment prohibits excessive fines, cruel and unusual punishment, and punitive measures disguised as civil regulation. When government action crosses into punitive territory, it cannot be justified as serving a legitimate governmental interest. Instead, it becomes an unconstitutional punishment.

279.    The Supreme Court has consistently held that disproportionate or degrading sanctions are punitive and violate constitutional protections. In *Weems v. United States*, 217 U.S. 349 (1910), the Court condemned excessive penalties as cruel and unusual punishment, emphasizing that punishment must be proportionate and rationally related to legitimate ends.

280.    In *Trop v. Dulles*, 356 U.S. 86 (1958), the Court struck down expatriation as punishment, describing civil banishment as "a form of punishment more primitive than torture." In *United States v. Bajakajian*, 524 U.S. 321 (1998), the Court held that forfeitures grossly disproportionate to the offense violate the Excessive Fines Clause.

281.    The Fifth Circuit has applied these principles to strike down measures that impose punitive consequences under the guise of civil regulation. See *Doe v. City of Lafayette*, 377 F.3d 757 (5th Cir. 2004) (restrictions animated by stigma and prejudice violate constitutional protections); *United States v. Rodriguez*, 553 F.3d 380 (5th Cir. 2008) (retroactive sentencing enhancements deemed punitive and unconstitutional); and *United States v. Ford*, 509 F.3d 714 (5th Cir. 2007) (retroactive application of punitive measures violates the Ex Post Facto Clause).

282.    St. Tammany Parish's ordinance imposes excessive fines on landlords, coerces eviction, and threatens the plaintiff with incarceration. These measures are not remedial—they are punitive, retroactive, and animated by passion and prejudice. By weaponizing housing law to banish Plaintiff from the community, the ordinance functions as civil punishment, violating the Eighth Amendment.

283.    Because the ordinance violates the Eighth Amendment, it cannot be rationally related to a legitimate governmental interest under the Fourteenth Amendment. The Supreme Court has made clear that animus, stigma, and excessive punishment are not legitimate interests. See *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432 (1985) (prejudice is not a valid governmental interest). Thus, the Parish's reliance on "public safety" is a pretext for unconstitutional punishment.

284.    The First Amendment protects not only freedom of speech but also the freedom of association and the right to petition the government for redress of grievances. Government action that penalizes individuals for lawful associations, stigmatizes them into silence, or coerces them into isolation violates these protections.

285.    In *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449 (1958), the Supreme Court held that government cannot compel disclosure or impose penalties that chill lawful association.

286.    The Court emphasized that freedom of association is a fundamental right, essential to the preservation of liberty. Similarly, in *Roberts v. United States Jaycees*, 468 U.S. 609 (1984), the Court recognized that freedom of association protects both intimate relationships and expressive group activity.

34

287.    The Fifth Circuit has applied these principles to municipal restrictions, recognizing that government cannot impose measures that effectively banish individuals from community life.

288.    In Doe *v. City of Lafayette*, 377 F.3d 757 (5th Cir. 2004) (restrictions animated by stigma and prejudice violate constitutional protections); *Conner v. Lavaca Hosp. Dist.*, 267 F.3d 426 (5th Cir. 2001) (legislative acts targeting individuals or narrow classes with punitive consequences implicate First Amendment concerns when they suppress association or petition rights).

289.    St. Tammany Parish's ordinance coerces landlords into evicting Plaintiff, thereby severing his lawful associations with family, neighbors, and community members. By weaponizing housing law to exclude Plaintiff from civic life, the ordinance chills his ability to engage in expressive association, participate in community activities, and petition the government for redress.

290.    The ordinance does not regulate speech or conduct prospectively; it retroactively punishes Plaintiff for a decades-old conviction already adjudicated, and in doing so, it suppresses his First Amendment rights.

291.    The Supreme Court has condemned similar measures that function as civil banishment. In *Trop v. Dulles*, 356 U.S. 86 (1958), the Court described expatriation as "a form of punishment more primitive than torture," recognizing that stripping individuals of community membership violates fundamental constitutional protections. Here, by forcing Plaintiff into almost homelessness and incarceration, the Parish has effectively imposed civil banishment, depriving him of liberty and suppressing his First Amendment rights to association and petition.

292.    Accordingly, the ordinance violates the First Amendment by punishing Plaintiff's lawful associations, chilling his expressive activity, and excluding him from civic life. These violations compound the ordinance's broader constitutional defects under the Eighth Amendment and the Fourteenth Amendment.

293.    The Constitution also prohibits states from passing laws that impair the obligation of contracts. See U.S. Const. art. I, § 10, cl. 1. The Supreme Court has long held that valid and enforceable contracts cannot be retroactively altered by legislative action.

294.    In *Home Building & Loan Ass'n v. Blaisdell*, 290 U.S. 398 (1934) (recognizing limits on state power to impair contracts); *Allied Structural Steel Co. v. Spannaus*, 438 U.S.

234 (1978) (striking down a Minnesota statute that retroactively altered pension obligations, holding that substantial impairment of contracts violates the Constitution).

295.     The Fifth Circuit has applied these principles to protect contractual rights against legislative interference. In *Energy Reserves Group, Inc. v. Kansas Power & Light Co.*, 459 U.S. 400 (1983) (applied in Fifth Circuit contract cases, holding that substantial impairment of contracts must serve a legitimate and necessary public purpose).

296.     In United States Trust Co. v. New Jersey, 431 U.S. 1 (1977), reaffirmed in Fifth Circuit contract cases, the Court emphasized that states and political subdivisions cannot retroactively impair contracts without a compelling justification.

297.     The Fifth Circuit has applied this test in contexts where municipalities attempted to alter or void private agreements, holding that mere financial expedience or speculative fear does not constitute a legitimate public purpose.

298.     Under this doctrine, St. Tammany Parish's ordinance, which coerced landlords into breaching valid lease agreements with Plaintiff, constitutes a **substantial impairment of contract**. The Parish cannot demonstrate that its ordinance serves a legitimate and necessary public purpose, as it is animated by stigma and prejudice rather than rational safety concerns.

299.     Accordingly, under *Energy Reserves* and Fifth Circuit precedent, the Parish's ordinance violates the Contract Clause of the United States Constitution. The coercion of landlords to breach binding leases is not a reasonable or necessary measure, but rather an arbitrary and punitive act that fails constitutional scrutiny.

300.     *In Conner v. Lavaca Hosp. Dist.*, 267 F.3d 426 (5th Cir. 2001) (acknowledging that legislative acts targeting individuals or narrow classes with punitive consequences implicate contract and bill of attainder concerns).

301.     Plaintiff's lease contract was valid and enforceable under Louisiana law. The ordinance altered its legal consequences by coercing landlords into eviction under threat of escalating fines and excessive fees. (See, Exhibits-1)

302.     Plaintiff was stripped of his leasehold rights and forced into financial instability, and the threat of incarceration solely because of retroactive legislative action. This

constitutes a substantial impairment of contract obligations, violating the Contract Clause.

303.    The Constitution prohibits ex post facto laws, which retroactively impose punishment for conduct already adjudicated. See *Calder v. Bull*, 3 U.S. (3 Dall.) 386 (1798) (defining ex post facto laws as those that retroactively increase punishment or impose new disabilities).

304.    The Supreme Court reaffirmed this principle in *Weems v. United States*, 217 U.S. 349 (1910) (condemning disproportionate retroactive penalties) and *Trop v. Dulles*, 356 U.S. 86 (1958) (holding that civil banishment and expatriation are punitive and unconstitutional).

305.    The Fifth Circuit has applied these principles to strike down retroactive measures that function as punishment rather than regulation. See *United States v. Rodriguez*, 553 F.3d 380 (5th Cir. 2008) (retroactive sentencing enhancements deemed punitive and unconstitutional); *United States v. Ford*, 509 F.3d 714 (5th Cir. 2007) (retroactive application of punitive measures violates the Ex Post Facto Clause).

306.    St. Tammany Parish's ordinance resurrects Plaintiff's decades-old conviction and attaches new housing exclusions, coercive fines, and threats of incarceration. These burdens are not remedial—they are punitive, retroactively imposed, and animated by stigma rather than legitimate public safety. Because the ordinance violates the Ex Post Facto Clause, it cannot be justified as serving a legitimate governmental interest under the Fourteenth Amendment.

307.    Even if the Parish claims "public safety" as justification, that interest does not apply here. The ordinance was justified by reference to a single, unrelated incident in Lacombe, which has no nexus to Plaintiff's housing, conduct, or risk profile. Plaintiff's sentencing judge had already determined he was not a predator, yet the ordinance disregards this individualized judicial finding and imposed blanket exclusion.

308.    The Supreme Court has made clear that **animus, stigma, and prejudice are not legitimate governmental interests**. See *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432 (1985) (striking down zoning restrictions based on irrational prejudice). The Fifth Circuit reaffirmed this principle in *Doe v. City of Lafayette*, 377 F.3d 757 (5th Cir. 2004), holding that municipal restrictions animated by stigma or fear fail rational basis review.

309. Because the ordinance violates the Ex Post Facto Clause and the Contract Clause, and because its claimed governmental interest rests on stigma and unrelated incidents rather than legitimate safety concerns, it fails constitutional scrutiny under the Fourteenth Amendment.

310. The Constitution protects fundamental **liberty interests** in family integrity, housing stability, and freedom from arbitrary government exclusion. These interests are rooted in the Due Process Clause of the Fourteenth Amendment. When government action intrudes upon these interests without individualized justification, it fails even rational basis review.

311. Accordingly, because the Parish ordinance intrudes upon Plaintiff's protected liberty interests and is animated by stigma rather than legitimate public safety, it fails constitutional scrutiny under the Fourteenth Amendment.

## COUNT 13 – FIRST AMENDMENT VIOLATION

312. **(Compelled Conduct, Freedom of Association, and Viewpoint Discrimination) against St. Tammany and official**

313. Plaintiff realleges and incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

314. Defendants, by enacting and enforcing Ordinance No. 24-9258, have compelled private landlords to refuse housing to Plaintiff and others similarly situated, thereby forcing expressive conduct that communicates government-mandated stigma. Plaintiff was denied 16 times in 3 weeks.

315. This coerced refusal constitutes unconstitutional compelled speech. The Supreme Court has long held that the government may not compel private actors to express or endorse a message against their will. *West Virginia State Board of Education v. Barnette*, 319 U.S. 624 (1943).

316. Defendants have further infringed Plaintiff's right to freedom of association by criminalizing and penalizing lawful landlord-tenant relationships. The First Amendment protects the right to form and maintain private associations free from government interference. *NAACP v. Alabama*, 357 U.S. 449 (1958).

317. By targeting a disfavored group and coercing private actors to adopt and enforce that prejudice, Defendants have engaged in unconstitutional viewpoint discrimination. The First Amendment prohibits the government from imposing penalties based on disfavored viewpoints. *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819 (1995).

318.    As a direct and proximate result of Defendants' actions, Plaintiff has suffered injury to person and property, including denial of housing, risk of re-incarceration, humiliation, stigmatization, and economic loss.

319.    Defendants' conduct violates the First Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment.

320.    Plaintiff respectfully requests that this Court declare Ordinance No. 24-9258 unconstitutional under the First Amendment, enjoin its enforcement, and award Plaintiff compensatory and punitive damages, together with such other relief as the Court deems just and proper.

## Superior Liability Under Louisiana Law
## against St. Tammany Parish Government

### Counts 14 and 15

321.    Respondeat Superior – Civil Code Article 2320 Louisiana law expressly recognizes the doctrine of respondeat superior, codified in Civil Code Article 2320, which provides:"Masters and employers are answerable for the damage occasioned by their servants and overseers in the exercise of the functions in which they are employed."

322.    This provision establishes that employers and political subdivisions are liable for the wrongful acts of their employees committed within the course and scope of employment. When government officials act under color of law to enforce unconstitutional ordinances, their employer—the Parish government—is directly responsible for the resulting damages.

323.    Louisiana Supreme Court – *Martin v. Thomas* In *Martin v. Thomas*, 2022-01163 (La. 6/29/22), 346 So.3d 238, the Louisiana Supreme Court clarified that plaintiffs may pursue both:

1.  Vicarious liability claims against the employer for the acts of its employees; and

2.  against the employer for its own independent wrongdoing, such as negligent hiring, supervision, training, or retention.

324.    The Court rejected the notion that an employer's stipulation of scope of employment bars direct negligence claims. Instead, Louisiana law allows plaintiffs to hold employers accountable both for their agents' misconduct and for their own independent negligence.

325.    St. Tammany Parish officials, acting under color of law, coerced landlords into breaching valid lease agreements, imposed excessive fines, and enforced unconstitutional housing exclusions. These actions were taken within the course and scope of their employment as Parish agents. Under Article 2320, Parish is vicariously liable for these acts.

326.    Moreover, the Parish itself is independently liable for its own negligence in enacting and enforcing ordinances animated by stigma and prejudice rather than legitimate governmental interest. By weaponizing housing law to banish Plaintiff, the Parish acted with deliberate indifference to constitutional protections, thereby incurring direct liability under *Martin v. Thomas*.

327.    Louisiana Constitution Article XII, §10(A) provides: "Neither the state, a state agency, nor a political subdivision shall be immune from suit and liability in contract or for injury to person or property."

328.    This provision removes any immunity defense for St. Tammany Parish Government. Combined with federal precedent (*Monell v. Department of Social Services*, 436 U.S. 658 (1978)), the Parish is fully liable for constitutional violations and cannot escape responsibility through claims of sovereign immunity.

329.    Accordingly, St. Tammany Parish Government is liable under Louisiana law both vicariously (for the unconstitutional acts of its officials) and directly (for its own negligent and unconstitutional ordinance). Superior liability under Article 2320 and *Martin v. Thomas* reinforces Plaintiff's right to recover damages, jointly and severally, against the Parish Government.

## Compensatory and Punitive Damages

*(Against St. Tammany Parish Government)*

| Claim / Basis | Compensatory – Emotional Distress | Punitive Damages |
| --- | --- | --- |
| Lease Breach (Coerced Landlord) | $10,000,000 | $15,000,000 |
| Due Process Violation | $10,000,000 | $15,000,000 |
| Equal Protection / Bill of Attainder | $10,000,000 | $15,000,000 |
| Ex Post Facto Violation | $10,000,000 | $15,000,000 |
| Eighth Amendment Violation (3x) | $30,000,000 | $45,000,000 |
| **Totals** | **$70,000,000** | **$105,000,000** |

**Table 2: Constitutional Violations**

*(Louisiana Constitution Provisions Reinforcing Plaintiff's Right to Relief)*

| # | Article & Section | Guarantee | Damages Allocation |
|---|---|---|---|
| | Art. XII, §10(A) | No immunity from suit or liability in contract | $5,000,000 |
| | Art. I, §2 | Due process of law | $5,000,000 |
| | Art. I, §3 | Equal protection of the laws | $5,000,000 |
| | Art. I, §23 | Prohibition of ex post facto laws | $5,000,000 |
| | Art. I, §20 | Prohibition of excessive fines and cruel or unusual punishment | $5,000,000 |
| **Total Constitutional Violations** | — | — | **$25,000,000** |

**Combined Totals**

- **Compensatory Damages (Emotional Distress): $70,000,000**
- **Punitive Damages: $105,000,000**
- **Constitutional Violations: $25,000,000**
- **Grand Total: $200,000,000** jointly and severally against St. Tammany Parish Government

Emotional Distress: $10,000,000 — for the trauma of losing stable housing when the Parish coerced the landlord into breaching a valid lease.

Punitive Damages: $15,000,000 — to punish and deter the Parish for coercing private parties to violate binding contracts in reckless disregard of constitutional protections.

Louisiana Constitution, Article XII, Section 10(A), provides that neither the state nor its political subdivisions are immune from suit and liability in contract, reinforcing Plaintiff's right to recover damages.

**Due Process Damages (Against St. Tammany Parish Government)**

Emotional Distress: $10,000,000 — for the anxiety, humiliation, and instability caused by being forced to move under threat of incarceration without notice or hearing.

Punitive Damages: $15,000,000 — for the Parish's deliberate denial of procedural fairness and reckless disregard of Plaintiff's liberty interests.

US Constitution guarantees due process of law, further supporting Plaintiff's claim for damages.

**Equal Protection / Bill of Attainder Damages (Against St. Tammany Parish Government)**

Emotional Distress: $10,000,000 — for the stigma, repeated housing denials, and reputational harm inflicted by singling out Plaintiff's class for punishment.

Punitive Damages: $15,000,000 — for legislatively targeting Plaintiff's class with animus and speculative fear, in violation of equal protection principles.

US Constitution guarantees equal protection of the laws, reinforcing Plaintiff's right to relief.

**Ex Post Facto Damages (Against St. Tammany Parish Government)**

Emotional Distress: $10,000,000 — for the retroactive imposition of eviction and threats of jail despite judicial findings that Plaintiff was not a predator.

Punitive Damages: $15,000,000 — for the Parish's unconstitutional retroactive punishment, disregarding settled judicial determinations.

Us Const. prohibits ex post facto laws, mirroring the federal protection.

**Eighth Amendment Damages (Against St. Tammany Parish Government)**

Emotional Distress: $10,000,000 (3x)— for displacement, **Expatriation /** repeated rejection in housing searches in St Tammany Parish, and the constant fear of incarceration tied to the ordinance.

Punitive Damages: $15,000,000(3x) — for imposing grossly disproportionate punishment through coercive fines on landlords that directly harmed Plaintiff.

8TH amendment prohibits excessive fines and cruel or unusual punishment, reinforcing Plaintiff's claim.

**Total Damages (Against St. Tammany Parish Government)**

Emotional Distress Damages: $50,000,000(3x) (across 7 claims).

Punitive Damages: $75,000,000(3x) (across 7 claims).

Combined Total: **$100,000,000**, (3x) jointly and severally against **St. Tammany Parish Government.**

## DAMAGES FOR FIRST AMENDMENT VIOLATION

As a direct and proximate result of Defendants' unconstitutional actions, Plaintiff has suffered the following damages:

- **Loss of housing opportunities ($2,500,000):** Plaintiff was denied lawful residence due to compelled landlord refusals, destroying his ability to secure stable housing and resulting in repeated displacement.

- **Risk of re-incarceration ($5,000,000):** Plaintiff faced repeated threats of imprisonment solely because the ordinance made housing inaccessible, placing liberty in jeopardy and causing ongoing fear of confinement.

- **Emotional distress and humiliation ($10,000,000):** Plaintiff endured stigma, rejection, and public exclusion mandated by government policy, causing severe mental anguish, humiliation, and lasting psychological harm.

- **Weight loss and physical harm ($850,000):** Plaintiff's health deteriorated, including documented weight loss from 220 pounds to 178 pounds, directly linked to stress, instability, and deprivation of secure housing. (See Exhibits W-W2)

- **Economic damages ($75,000):** Plaintiff lost deposits, application fees, and incurred relocation costs due to repeated housing denials, along with lost income opportunities tied to unstable living conditions.

- **Family grief and reputational harm ($2,500,000):** Plaintiff's mother and loved ones suffered fear and grief over his potential re-incarceration, while Plaintiff's reputation was stigmatized by compelled exclusion and public labeling.

- **Punitive damages ($20,000,000):** Defendants acted with deliberate indifference and animus, warranting punitive damages to punish and deter future constitutional violations.

**Vicarious Liability Damages (Respondeat Superior – Civil Code art. 2320)**

**Compensatory Damages**

- Lost rental income and deposits: $10,000,000

- Property vacancy and turnover costs: $5,000,000

- Reputational harm impairing ability to attract tenants: $5,000,000

- Emotional distress and humiliation from coerced eviction and stigma: $10,000,000

- Physical harm and deterioration of health tied to stress and instability: $5,000,000

**Total Compensatory Damages (Vicarious Liability): $35,000,000**

**Punitive Damages**

- Coercion of landlords under threat of escalating fines: $10,000,000

- Arbitrary enforcement animated by stigma: $10,000,000

- Retaliatory eviction pressure violating constitutional rights: $10,000,000

**Total Punitive Damages (Vicarious Liability): $30,000,000**

**Combined Vicarious Liability Damages: $65,000,000**

**Direct Negligence Damages (Independent Liability – *Martin v. Thomas*)**

**Compensatory Damages**

- Civil banishment and repeated housing denials: $10,000,000

- Financial burdens imposed on elderly landlords (e.g., Abram Williams, age 80): $10,000,000

**Total Compensatory Damages (Direct Negligence): $20,000,000**

**Punitive Damages**

- Reckless disregard of Plaintiff's liberty interests and judicial findings: $10,000,000

- Deliberate enactment of unconstitutional ordinance animated by prejudice: $10,000,000

**Total Punitive Damages (Direct Negligence): $20,000,000**

**Combined Direct Negligence Damages: $40,000,000**

**Combined Superior Liability Damages**

- **Vicarious Liability Damages: $65,000,000**

- **Direct Negligence Damages: $40,000,000**

- **Grand Total (Superior Liability): $105,000,000**

**Final Combined Totals**

- **Compensatory Damages**

  o Federal Constitutional Claims: $70,000,000

44

- o   U.S. Constitutional Reinforcement: $25,000,000

- o   First Amendment: $20,925,000

- o   Superior Liability: $55,000,000

- o   **Total Compensatory: $170,925,000**

- **Punitive Damages**

  - o   Federal Constitutional Claims: $105,000,000

  - o   First Amendment: $20,000,000

  - o   Superior Liability: $50,000,000

  - o   **Total Punitive: $175,000,000**

- **Grand Total (Compensatory + Punitive) $345,925,000 jointly and severally against St. Tammany Parish Government**

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants, and grant the following relief:

"Plaintiff respectfully requests that this Court issue emergency injunctive relief, including a Temporary Restraining Order and Preliminary Injunction, to prevent ongoing irreparable harm pending final judgment.

**Declaratory Relief (Against Parish Officials in Official Capacities):** A declaration that the St. Tammany Parish ordinance, as applied to Plaintiff, violates the Contracts Clause, Liberty Interest, Due Process Clause, Equal Protection Clause, First Amendment, Ex Post Facto Clause, and the Eighth Amendment of the United States Constitution, as well as parallel provisions of the Louisiana Constitution (Article I, Sections 2, 3, 20, 23; Article XII, Section 10).

**Injunctive Relief (Against Parish Officials in Official Capacities):** A permanent injunction prohibiting Parish officials from enforcing the ordinance against Plaintiff, his landlords, landlords or any similarly situated individuals, and requiring them to cease coercive eviction practices, and retroactive penalty schemes.

**Declaratory Relief:** A declaration that the St. Tammany Parish ordinance imposing $500 per day penalties against pass landlords who house individuals classified as sex offenders is unconstitutional, violating the Eighth Amendment, the Fourteenth Amendment, and protections against involuntary expatriation and civil banishment.

Plaintiff further notes that the conduct alleged herein has been referred to the **U.S. Department of Justice, Civil Rights Division,** for investigation under **Title 18 U.S.C. § 242,** which criminalizes the willful deprivation of constitutional rights under color of law. While this civil action seeks compensatory and punitive damages, declaratory relief, and injunctive relief, Plaintiff also asserts that Defendants' actions rise to the level of criminal violations warranting federal investigation and prosecution

**Further Relief:** Such other and further relief as this Court deems just and proper.

Respectfully Submitted,

Glenn Damond

/S/ : Glenn - Damond

Cell: 985-379-8016

Cell : 504-220-4268

glenndamond3@gamil.com

Date: 12-18-2025

/S/ Glenn-Damond

Glenn Damond

P. O Box 1236

Lacombe, La 70445

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

**GLENN DAMOND,**                                    Civil Action No. _____

**Plaintiff**

v.

**ST. TAMMANY PARISH GOVERNMENT, et al.**

 **Defendants.**

## Verification

I, Glenn Damond, Plaintiff in the above-entitled action, declare under penalty of perjury 28 USC 1746, that all alleged are true and all documents are true and correct to the best of my knowledge.

Executed this __18__ day of ___Dec___, 2025,

 in Lacombe, Louisiana.

Glenn Damond,

/S/ _Glem-Damond_

47